IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | **DOCKET NO. A-12-CR-137 (01) SS** |
| | § | |
| DAVID JAMES JACOBY | § | |

## SENTENCING MEMORANDUM IN SUPPORT OF DAVID JACOBY

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT JUDGE

NOW COMES DAVID JAMES JACOBY, Defendant herein, and submits the following sentencing memorandum for consideration by the Court in determining the sentence to be imposed in this case.

## INTRODUCTION

Dr. Jacoby respectfully submits to the Court that the appropriate sentence in this case is 24-30 months based on a base offense level of 18 and a total offense level of 17 with no departures. Dr. Jacoby submits that the base offense level of 18 is warranted because no death resulted from the use of hydrocodone, the controlled substance at issue. Dr. Jacoby contends that his son Brandon's death did not result from hydrocodone and so cannot be used to calculate the base offense level.

Dr. Jacoby also requests that no upward departure be granted due to his rehabilitative efforts and his need to provide for his disabled daughter, Haley Jacoby, and because a guideline sentence in this case is sufficient but not greater than necessary to meet the goals established by 18 U.S.C. §3553(a).

### REQUEST FOR FAVORABLE EXERCISE OF DISCRETION

### PURSUANT TO 18 U.S.C. §3553(a)

Under statute any sentence must be sufficient, *but not greater than necessary*, to accomplish the Congressional goals set forth at 18 U.S.C. §3553(a).  In this case, the Defendant humbly requests that the Court find that that such a sufficient sentence is 24-30 months.  Dr. Jacoby submits that this guideline range meets the Congressional goals articulated in 18 U.S.C. §3553(a) because the guidelines under which this range was calculated take into account the nature and circumstances of the offense, Dr. Jacoby's lack of criminal history, the need for the sentence to promote respect for the law, to offer adequate deterrence, and the need to apply consistent sentences.  Dr. Jacoby further submits that he has learned from his mistakes, has put in place steps to deal with his drug use, which was the motivating cause for the current offense, and has maintained good sobriety, all in an effort to rehabilitate himself to provide for his severely disabled daughter, Haley Jacoby.  Taking into consideration these factors provides further support for the sufficiency of a 24-30 month sentence.

Since this case was initiated Dr. Jacoby has taken steps to forestall the bad choices with drugs he made that led him to the conduct now being punished.  Dr. Jacoby sought intensive residential treatment at an inpatient treatment center from July 15, 2011 to November 1, 2011. Exhibits at Bates 49-50.  At the center Dr. Jacoby successfully completed all requirements of the intensive residential treatment program which included detoxification, and  individual, family and group therapy.  *Id.*  On recommendation of the treatment center, Dr. Jacoby subsequently lived at the Sober Living Community for three months where he was fully compliant with his sobriety program and set an example to others.  Exhibits at Bates 4, 14.  Dr. Jacoby is very

committed to his sobriety, which he had maintained despite the profound personal tragedy of losing his son, Brandon Jacoby.

Dr. Jacoby has also initiated healthy drug-intolerant relationships. Whereas his prior marriage to Ms. Bucar was in the context of a drug-permissive environment, his current relationship with and engagement to Ms. Marilyn Chevalier is in a zero-tolerance environment with respect to drugs. Exhibits at Bates 10-11. Dr. Jacoby also enjoys the support of his friends and colleagues. *See generally* Exhibits at Bates 1-2, 5-9, 12-21. To further his recovery, Dr. Jacoby has acknowledged his substance abuse issues to his friends and colleagues and has taken responsibility for his actions by pleading guilty in this case. Exhibits at Bates 1, 5-6, 15.

Dr. Jacoby has initiated these changes in order to be able to move on with his life after the tragedy of losing his son and to be a support for his only living child, Haley Rose Jacoby. Haley suffers from Chromosome Deficient Disorder, hearing loss and a low IQ. PSIR at ¶45. Consequently, Haley is unable to function as an independent adult. *Id.* Dr. Jacoby's son, Brandon, would take care of Haley while Dr. Jacoby was at work. With Brandon's death, Dr. Jacoby is Haley's only sober support system as her mother, an admitted addict, is still on narcotic pain medication. PSIR at ¶43. Dr. Jacoby's incarceration will be particularly difficult on Haley as she will have to stay with her addict mother during this time, or worse, become a ward of the state.

Dr. Jacoby also submits his professional history as a mitigating factor for the Court to consider. Dr. Jacoby has had a career as a dedicated ER physician. *See generally* Exhibits at Bates 22-29. His co-workers describe him as being an outstanding physician and have found him to be thorough, reliable, professional, knowledgeable, and a good teacher. Exhibits at Bates 24-29. His colleagues have also commended Dr. Jacoby on his ER decision making abilities and

have noted he has never made a single error with an ER patient in 25 years. *Id.* at 27. Thus, Dr. Jacoby also asks that the Court takes into account his decades long commitment to his patients when coming to its sentencing decision.

For the foregoing reasons, Dr. Jacoby requests that the Court not grant an upward variance but stay within the guideline range of 24-30 months. Alternatively, if the Court finds a higher total offense level, Dr. Jacoby requests the Court for a downward departure taking into account the foregoing.

## LAW GOVERNING THE SELECTION OF THE APPLICABLE BASE OFFENSE LEVEL

The applicable base offense level will be determined by whether the Court finds that a death resulted from the use of hydrocodone. Any finding regarding death from hydrocodone use will be dispositive of what Dr. Jacoby's crime of conviction is and consequently, what crime to use in determining the base offense level. At the plea hearing this issue was specifically reserved by the parties to be determined by the Court at sentencing. Pl. Hrg. Transc. 17:17-22. Defendant respectfully submits that the end result should be a base offense level of 18 and not 26 as recommended by the PSIR.

The statute to which Dr. Jacoby is pleading guilty allows for a 10-year maximum penalty for distribution of a scheduled III controlled substance. 21 U.S.C. §841(b)(1)(E)(i). Alternatively, the statute provides an enhanced 15-year maximum if "death or serious bodily injury results from the use of **such** substance" *Id.* (emphasis added). If the Court finds that death occurred from the use of hydrocodone, the schedule III substance at issue, then the Court

will sentence Dr. Jacoby under the enhanced 15-year maximum count. Otherwise, the Court will sentence Dr. Jacoby under the regular 10-year maximum count.

Which count—enhanced or regular—the Court finds Dr. Jacoby guilty under will determine the base offense level to be applied under U.S.S.G. §2D1.1(a). U.S.S.G. §2D1.1(a)(4) prescribes an enhanced base offense level of 26 when "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." U.S.S.G. §2D1.1(a)(5) applies when no death or serious bodily injury occurred and is based, in Dr. Jacoby's case, only upon the quantity of hydrocodone involved. An application of U.S.S.G. §2D1.1(a)(5) to Dr. Jacoby's case produces a base offense level of 18. PSIR at ¶24.

The Fifth Circuit has held that the enhanced sentencing guidelines for serious death resulting from use of controlled substance only apply when the defendant is convicted under the enhanced provision of the statute. *U.S. v. Greenough*, 669 F.3d 567, 575 (5th Cir. 2012). Thus, if a death occurred during the course of the drug crime, but the drug crime of conviction was not the enhanced count charging death or serious bodily injury, that death cannot be used in the calculation of the base offense level under U.S.S.G. §2D1.1(a). *Id.* Absent this conviction under the statutory enhancement, the enhanced sentencing guideline cannot apply. *Id.*

In *Greenough*, the court found the mere incidence of a death occurring in the course of the drug crime was not enough to trigger the enhanced guideline. *See id.* Ms. Greenough was engaged in distributing heroin, a schedule I controlled substance. In the course of this distribution, Ms. Greenough sold heroin to Mr. Reitz. *Id.* at 570. Mr. Reitz was subsequently found dead. *Id.* at 571. The medical examiner concluded that Mr. Reitz died of multiple drug intoxication and noted that Mr. Reitz had heroin in his system at the time of his death. *Id.* The statute penalized distribution of a Schedule I substance with a maximum imprisonment of 20

years.  21 U.S.C. §841(b)(1)(C).  As an enhancement, if death or serious bodily injury resulted from the use of the substance, the statute provided for imprisonment of a minimum of 20 years and up to life.  *Id.*  Ms. Greenough pleaded guilty to violating the statute.  *Greenough*, 669 F.3d 567 at 570.  The PSIR found that heroin sold by Ms. Greenough had caused Mr. Reiz's death.  *Id.* at 570.  Based on the calculations in the PSIR and its finding that death resulted from the use of heroin, Ms. Greenough was sentenced under the enhanced guideline in U.S.S.G. §2D1.1(a)(2) which prescribes a higher base offense level for death resulting from use of the controlled substance.  *Id.* at 570.  The court found that Ms. Greenough did not plead guilty to the enhanced provisions of that statute—Ms. Greenough had not pleaded to the use of the controlled substance resulting in death.  *Id.* at 575.  Therefore, notwithstanding the death of Mr. Reiz from the heroin use, or the PSIR's calculations and findings, the court held that the enhanced guideline was inapplicable to Ms. Greenough.  *Id.*  The court held that the enhanced sentencing guideline could only be applied if Ms. Greenough had pleaded guilty to the statutory enhancement—which she had not.  *Id.*  The court reasoned that the sentencing guidelines were intended to track the statute.  *Id.*  Thus, the enhanced guideline applied when the statutory enhancement applied.  *Id.*  Thus, because Ms. Greenough had not pleaded to the enhanced statute, Mr. Reiz's death could not be used to calculate her base offense level.  *Id.*

Similarly to *Greenough*, Dr. Jacoby was charged with conspiracy to distribute a controlled substance —in this case a Schedule III substance.  However, it is Dr. Jacoby's position that he should not be convicted under the statutory enhancement of death from use of the controlled substance.  As in *Greenough'*s case there was a death involved in the conspiracy— that of Brandon Jacoby.  However, Brandon's death was not a result of the use of hydrocodone. The expert evidence at the sentencing hearing will establish that the cause-in-fact of Brandon

Jacoby's death was not hydrocodone but some unknown idiosyncratic cause.  Therefore, Dr. Jacoby cannot be charged under the statutory enhancement.  Consequently, because Dr. Jacoby's crime of conviction will not be the enhanced statutory provision, the enhanced guideline for death resulting from use of the controlled substance cannot be applied to him.  Accordingly, U.S.S.G §2D1.1(a)(4), which is the enhanced guideline for death resulting from use of a scheduled III controlled substance cannot be applied to him.  As a result U.S.S.G. §2D1.1(a)(5) must be used to calculate the base offense level.   The PSIR agrees that under this guideline Dr. Jacoby's base offense level is 18.  PSIR at ¶24.  Consequently, Dr. Jacoby respectfully requests the Court to use 18 as the base offense level which would result in a total offense level of 17.

Dr. Jacoby agrees that the Court can take into account the death of Brandon Jacoby in its sentence—Dr. Jacoby merely submits that Brandon Jacoby's death cannot be used in the calculation of the ***base offense level*** under U.S.S.G. §2D1.1(a).  Dr. Jacoby, nevertheless, requests the Court to refrain from granting an upward departure for the reasons involving his rehabilitation and need to care for his disabled daughter elaborated above.

## CONCLUSION

Based on the foregoing response, Dr. Jacoby respectfully asks this Court to find that the base offense level is 18 under U.S.S.G. §2D1.1(a)(5) and not 26 under U.S.S.G. §2D1.1(a)(4). Dr. Jacoby also requests the Court to favorably exercise its discretion by not imposing any upward departure due to his need to care for his disabled daughter and the other considerations previously mentioned.

Respectfully submitted,

/s/ Louis Leichter_____
Louis Leichter
Attorney for Defendant
State Bar No. 24000243
Leichter Law Firm
1602 East 7th Street
Austin, Texas 78702
Phone: 512-495-9995
Fax: 512-482-0164
Email: louis@leichterlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2012, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:


Grant Sparks
Assistant United States Attorney
816 Congress, suite 1000
Austin TX 78701
(512) 916-5858
Fax (512) 916-5854
Grant.Sparks@usdoj.gov
Attorney for the Government


        and I hereby certify that I have faxed the document to the following non-CM/ECF

participants:


Caroline Clark
U.S. Probation Officer
903 San Jacinto Blvd., Suite 121
Austin, TX 78701
(512) 916-5761
Fax (512) 916-5766


                                        /s/ Louis Leichter
                                        Louis Leichter